UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| VIVIAN SAROKI-KELLER,<br><br>  Plaintiff,<br><br>v.<br><br>UNIVERSITY OF MICHIGAN,<br><br>  Defendant. | Case No. 20-10725<br>Honorable Laurie J. Michelson |

**OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [18] AND
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [19]**

Vivian Saroki-Keller is a licensed psychologist who, for 17 years, worked as a part-time counselor for the University of Michigan Counseling and Psychological Services (CAPS) at the Dearborn campus. Saroki-Keller suffers from chronic pain and is medically unable to work more than 20 hours a week.

Following student calls for reform and consultant recommendations, in June 2019, the University decided to reorganize its Dearborn counseling center. It adopted several changes so CAPS could effectively serve more students and reduce long wait times for students seeking mental health services. One of those changes was to convert the two part-time counseling positions, including Saroki-Keller's, into two full-time positions. Unable to work full-time, Saroki-Keller requested the University maintain her part-time position as an accommodation for her disability. But the University was not able to offer her a part-time counseling position or to find her

alternative part-time work in a different University office. So in 2019, after 17 years on the job, Saroki-Keller stopped working for the University.

Saroki-Keller then filed this lawsuit, alleging that the University failed to accommodate her disability, terminated her based on her disability, and failed to engage in the interactive process in violation of the Rehabilitation Act. The essence of the dispute is whether full-time work is an essential function of the counselor position. Both parties feel they are entitled to summary judgment on this issue and have so moved. Having thoroughly reviewed the summary-judgment record, the Court will GRANT the University's motion for summary judgment and DENY Saroki-Keller's cross-motion for the reasons set out below.

I.

A.

Saroki-Keller is a Limited Licensed Psychologist with a Masters in Marriage and Family Psychology. (ECF No. 19-2, PageID.212.)

In 1997, Saroki-Keller was injured when she fell from a chair. (*Id.* at PageID.217.) After the fall, she began experiencing increasingly worse back pain. (*Id.*) Eventually, she sought treatment for pain in her right temple, right jaw area, right neck area, thoracic area, lower right sacroiliac area, and her feet. (*Id.* at PageID.218.) Saroki-Keller's doctor determined that she has chronic pain and started her on a course of treatment that includes physical therapy and multiple injections. (ECF No. 18-7, PageID.148.) As a result, her doctor recommends Saroki-Keller only work part-time. (*Id.*)

The University hired Saroki-Keller in August 2002, where she worked as a Counseling Psychologist until August 31, 2019. (ECF No. 19-2, PageID.212, 228.) Saroki-Keller worked for the University's CAPS office on the Dearborn campus. (*Id.* at PageID.215, 230.) The position was part-time for the 17 years Saroki-Keller worked at the University. (*Id.* at PageID.212.)

During her tenure as a counseling psychologist, Saroki-Keller had no performance issues and received several merit-based pay increases. (ECF No. 19-11, PageID.293–295.) Saroki-Keller's supervisor, Dr. Sara Byczek, stated that Saroki-Keller's departure from the University was not performance related in any way. (*Id.* at PageID.295.)

But the landscape of the University's mental health services shifted in 2018. Student need for mental health support increased and students were complaining about the wait time to get counseling appointments. (ECF No. 18-3, PageID.120.) In November, the student senate of the University of Michigan-Dearborn passed a resolution to "ensure" the University is "upholding its duty to provide an adequate counseling center with staff that meets International Association of Counseling Services (IACS) qualifications for staffing." (ECF No. 18-4, PageID.124.) The resolution stated that 33 percent of students who asked for counseling services were labeled as "semi-urgent status" and at the time, students had to wait an average of 16 days to see a CAPS counselor. (*Id.*) The resolution further stated that the University was violating IACS standards because it did not have "at least five to seven, non-graduate trainee, non-director, non-associate director counselors[.]" (*Id.*)

3

Nothing in the record indicates that Saroki-Keller was not a "non-graduate trainee, non-director, non-associate director" counselor at the time. The student government asked the University to update its counseling center and hire additional qualified counselors to meet IACS credentials and recommendations. (*Id.* at PageID.125.)

Also, as part of the November 2018 resolution, the student government requested that the University "consult the Director of Counseling and Disability services in making the changes to [CAPS.]" (*Id.*) The University asked Dr. Todd Sevig, who serves as Director of CAPS, to provide a consultation for the Dearborn campus CAPS center and recommend changes. (ECF No. 18-5, PageID.128.)

Around April 2019, Dr. Sevig met with the employees of the counseling center, including Saroki-Keller. (ECF No. 19-2, PageID.216.) Saroki-Keller recalls telling Dr. Sevig that she hoped the University would hire more staff because she felt "overworked." (*Id.*) Saroki-Keller also testified that the case load seemed to increase each year. (*Id.* at PageID.214.) Dr. Sevig's consultation report confirmed many of these concerns and the concerns in the student senate resolution, including long wait times and increased demand for mental health services. (*Id.* at PageID.129.)

Dr. Sevig also offered recommendations on staffing the counseling center. (*Id.* at PageID.135.) Dr. Sevig recommended, among other things, that the University change the two part-time staff positions, one of which was Saroki-Keller's, to two full-time positions. (*Id.*) In his report, Dr. Sevig warned that without adequate staffing at the center, there would be an ever-growing waitlist, difficulty providing services to students experiencing increasingly severe psychological issues, an increase in

4

liability risks to the counseling center and the University, decreased support for the academic success of students, and reduced availability to support the campus community. (*Id.* at PageID.131–132.)

In May 2019, Saroki-Keller learned that the CAPS department was going to be reorganized pursuant to Sevig's consultation report. (ECF No. 19-2, PageID.219.) As part of this reorganization, CAPS was to hire more counselors to meet IACS standards. (ECF No. 19-11, PageID.297 (showing that from September 2019 to September 2020, CAPS hired three full-time counselors in addition to the three already working there).)

In addition to hiring more people, the University made changes to Saroki-Keller's position too. In June 2019, Dr. Byczek told Saroki-Keller that the part-time positions in the office were also going to be eliminated (*id.* at PageID.220) but that Saroki-Keller could continue working at CAPS as a full-time counselor (*see* ECF No. 19-11, PageID.299).

In July 2019, Saroki-Keller met with Molly McCutchan, Assistant Director of Human Resources and the ADA contact person for the Dearborn campus. (*Id.* at PageID.223; ECF No. 19-4, PageID.240.) McCutchan asked Saroki-Keller to submit documentation of her disability, which Saroki-Keller did. (ECF No. 19-2, PageID.223; *see* ECF No. 18-7, PageID.148–149.)

Satisfied with the submitted medical documentation, McCutchan met with Saroki-Keller a few times in July and August 2019 to discuss Saroki-Keller's accommodation request and to see what the University could offer her. (ECF No. 19-

5

2, PageID.224; ECF No. 19-4, PageID.243.) Saroki-Keller reiterated she could not work full-time. (ECF No. 19-2, PageID.225.) McCutchan reached out to Dr. Byczek, Christina Kline, the University's ADA coordinator, and Amy Finley, the Dean of Students and Dr. Byczek's supervisor, to discuss Saroki-Keller's request. (ECF No. 19-4, PageID.244.) All three agreed that CAPS could not offer Saroki-Keller a part-time position after restructuring. (*Id.* at PageID.243–244.)

McCutchan then looked to other options for Saroki-Keller. McCutchan recommended that Saroki-Keller look for part-time positions in other departments and initiated the Reassignment Accommodation Committee (RAC) Process and a Work Connections claim to assist. (ECF No. 19-4, PageID.245–246.) But no equivalent part-time position was available. (*Id.* at PageID.246.) McCutchan also sent Saroki-Keller a list of other accommodations the University could offer if Saroki-Keller accepted the full-time counseling position. (ECF No. 19-2, PageID.226.) But her doctor again advised that these accommodations would only work if Saroki-Keller was also on a part-time schedule. (*Id.*)

After these other options had been exhausted, Saroki-Keller received a letter from Finley stating that her part-time position was to be eliminated as of August 31, 2019. (ECF No. 18-10, PageID.158.) The letter informed Saroki-Keller that CAPS "was unable to accommodate [her] disability," but the University will continue to assist her in locating another position through the RAC. (*Id.*) Saroki-Keller would also be placed on reduction-in-force status for one year. (*Id.*) As of February 2021, Saroki-Keller is not employed. (ECF No. 19-2, PageID.230.)

B.

Saroki-Keller filed this lawsuit in March 2020. (ECF No. 1.) Saroki-Keller complains that the University failed to accommodate her disability, terminated her based on her disability, and failed to engage in the interactive process under Section 504 of the Rehabilitation Act, 29 U.S.C. 794(a) (Count I). (*Id.* at PageID.7–8.)

Following discovery, the University filed a motion for summary judgment (ECF No. 18), and Saroki-Keller filed a cross-motion for summary judgment (ECF No. 19). Both motions are now before the Court. Neither party claims there are any genuine issues of material fact in dispute and both ask the Court to rule as a matter of law. Given the clear briefing and record, the Court may do so without further argument. *See* E.D. Mich. LR 7.1(f).

II.

Federal Rule of Civil Procedure 56 provides, "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

When, as here, there are cross-motions for summary judgment, the Court considers them separately, and it is not necessarily the case that either party is entitled to summary judgment. *See Ohio State Univ. v. Redbubble, Inc.*, 989 F.3d 435, 442 (6th Cir. 2021). When considering the University's motion, the evidence is viewed in the light most favorable to Saroki-Keller and the initial (and ultimate) burden is on the University to show that it is entitled to judgment as a matter of law. *See id.* The opposite is true when considering Saroki-Keller's motion. *See id.*

III.

The Court begins with Saroki-Keller's claim that the University violated the Rehabilitation Act by not appropriately accommodating her disability.

A.

Claims under the Rehabilitation Act are reviewed under the same standard as Americans with Disabilities Act (ADA) claims. *Keith v. Cnty. of Oakland*, 703 F.3d 918, 923 (6th Cir. 2013). So the Court will use case law citing both statutes interchangeably in its analysis.

Failure to provide a reasonable accommodation to a disabled, but otherwise qualified, person is unlawful discrimination under the ADA and the Rehabilitation Act. *Hostettler v. College of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018). To establish a prima facie case for failure to accommodate, an employee must show that (1) the employee is disabled within the meaning of the ADA; (2) the employee is otherwise qualified for the position, such that the employee can perform the essential functions of the job with or without reasonable accommodation; (3) the employer knew or had reason to know of the employee's disability; (4) the employee requested an accommodation; and (5) the employer failed to provide a reasonable accommodation thereafter. *Green v. BakeMark USA, LLC*, 683 F. App'x 486, 491 (6th Cir. 2017). Once an employee establishes a prima facie case, the burden shifts to the employer to demonstrate that any particular accommodation would impose an undue hardship on the employer. *Mosby-Meachem v. Memphis Light, Gas & Water Div.*, 883 F.3d 595, 603 (6th Cir. 2018).

8

The parties agree that the central inquiry in this case is whether Saroki-Keller is otherwise qualified for the position of a CAPS counselor. The University does not dispute that Saroki-Keller is a disabled person within the meaning of the Rehabilitation Act. (ECF No. 19-3, PageID.235.) So to establish that she is otherwise qualified, Saroki-Keller must show that she can perform the essential functions of the job with or without accommodations. 42 U.S.C. § 12111(8); *Mosby-Meachem*, 883 F.3d at 603.

The University argues that Saroki-Keller is not otherwise qualified for the counselor position at CAPS because she cannot work full-time, which is an essential function of being a CAPS counselor. There is no dispute of fact that Saroki-Keller cannot work full-time. (ECF No. 19-2, PageID.224; ECF No. 19-7, PageID.280.) So whether Saroki-Keller is otherwise qualified turns on whether working full-time is an essential function of being a CAPS counselor. The Court finds that it is.

B.

When determining whether a specific duty is an essential function of the job, the Court first looks to factors provided by ADA regulations. These factors include the employer's judgment as to which functions are essential; written job descriptions; the amount of time spent on the job performing the function; the consequences of not requiring the incumbent to perform the function the work experience of past incumbents in the job; and the current work experience of incumbents in similar jobs. 29 C.F.R. § 1630.2(n)(3) (2021); *see also Green*, 683 F. App'x at 492. The Court finds that these factors either favor the University, or at best, favor neither party.

Take the written job description first. The job description for the position Saroki-Keller was hired for states that the position is part-time, or 20 hours a week. (ECF No. 19-12, PageID.307.) The new job description, however, which was used after the University converted all part-time positions into full-time positions, no longer includes the part-time reference. It does not state any hour requirement. (ECF No. 19-13, PageID.309.) It is undisputed that the University did not use the old job posting when hiring counselors after it reorganized CAPS. And the lack of any hour requirement in the new description tells the Court nothing about whether full-time work is an essential function. On one hand, not specifying an hour requirement would likely lead a reasonable person to assume the position is full-time. On the other hand, full-time employment was not specifically listed as part of the job. So the Court concludes this factor does not tip the balance in favor of either Saroki-Keller or the University.

Turning to the employer's judgment, the record shows that the University determined that full-time employment is an essential function of the CAPS counselor position. The University converted both part-time counselor positions to full-time positions, and no part-time counselor positions exist. (ECF No. 19-4, PageID.243; *see* ECF No. 19-2, PageID.223.) The University did this in response to a student senate resolution asking the University to ensure that CAPS meets IACS standards and to "hire additional qualifying counselors to meet IACS credentials and recommendations[.]" (ECF No. 18-4, PageID.125.) The University also acted pursuant to the recommendations of Dr. Sevig, which included converting the two part-time

10

counseling positions to full-time positions to address the issue of student wait times and to increase the number of students CAPS counselors could provide needed mental health services to. (*See* ECF No. 18-5, PageID.135.) Although Saroki-Keller correctly points out that the University's initial judgment was that part-time employment was satisfactory, the University has shown that the pre-reorganization status quo was insufficient to meet the increasing mental health needs of students. In other words, the above events prompted the University to change its judgment. Courts grant summary judgment when the employer's judgment, as evidenced by "words, policies, and practices" is "job-related, uniformly-enforced, and consistent with business necessity." *E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 765 (6th Cir. 2015). The University has met this standard. In fact, it has shown that it is not only the University's judgment, but the judgment of the student senate and Dr. Sevig that the University needed to increase availability of counseling services. Therefore, the factor of the employer's judgment cuts in favor of the University.

Saroki-Keller contends that the Sixth Circuit's opinion in *Hostettler* supports her argument that working full-time is not an essential function. True, full-time presence at work is not an essential function just because an employer says that it is. *Hostettler*, 895 F.3d at 857. And part-time work schedules are included in ADA regulations as an example of a reasonable accommodation, which indicates that full-time employment is not an essential function of every job. *See* 42 U.S.C. §12111(9)(B).

But the Court in *Hostettler* emphasized that the employer there had not explained "*why* Hostettler could not complete the essential functions of her job unless

11

she was present 40 hours a week." *Hostettler*, 895 F.3d at 856 (emphasis in original). Here, the University has provided a specific reason why Saroki-Keller must work full-time. The evidence of record shows not only that students were demanding an increase in services, but that wait times for counseling services were significant. (*See* ECF No. 18-4; ECF No. 18-13, PageID.167–169 (showing intake wait time for students from September 2018 to May 2019 was, on average, almost six days, and showing at least sixteen students waited more than fourteen days).) And long wait times could exacerbate psychological issues present within the student body and increase the University's liability. (ECF No. 18-3, PageID.121.) The record also indicated that students were leaving the University due to mental health concerns. (ECF No. 18-4, PageID.125.) The Sixth Circuit has recognized that reducing wait times and addressing client needs are appropriate reasons for deeming a function essential. *Williams v. AT&T Mobility Servs. LLC*, 847 F.3d 384, 392 (6th Cir. 2017) (holding that regular attendance was an essential function of a call center job because if plaintiff was absent, customer wait times would increase and speed of customer service would decrease). Further, the Court made this finding in relation to a customer call center, which likely handles less urgent and less severe situations than a university mental health counseling center.

And logically, Saroki-Keller needed to work more hours so she could be available to more students. Indeed, the University's Implementation Plan for the changes to the counseling center provides a breakdown of a 40-hour work week for CAPS counselors: four hours of intake, two hours of group therapy, 20 hours of

12

individual therapy appointments, one hour of staff meetings, five hours of paperwork/prep, four hours of outreach, workshops, and presentations, and four hours dedicated to the coordinator role. (ECF No. 19-17, PageID.347.) Just to meet the new requirements for intake and group and individual therapy—which most directly address student need—Saroki-Keller would have to work six hours more than she had been working previously. To fit these duties into a 20-hour, part-time schedule, Saroki-Keller would necessarily have to cut down on some of the time allotted to see students. And this would directly impact the University's ability to see more students and decrease wait times. Therefore, *Hostettler* is not applicable here where the University has shown why Saroki-Keller needs to work 40 hours a week as a CAPS counselor and tied it directly to the requirement of seeing more students. For all of these reasons as well, the consequences of not requiring Saroki-Keller to work full time—another ADA factor—clearly favors the University.

Likewise, the work experience of others who have previously or currently worked as a CAPS counselor at the Dearborn campus also favors the University in showing that full-time employment is an essential function. Saroki-Keller testified that she felt "overworked" in her part-time counseling position and that each year, the case load had increased. (ECF No. 19-2, PageID.214, 216.) And given the increase in student demand and focus on student wait times, the University reorganized the department and no counselors worked part-time any longer. (ECF No. 19-11, PageID.299.) As of March 2021, CAPS has six full-time counselors. (*See id.* at PageID.297.) So both Saroki-Keller's experience and the experience of current

13

counselors indicates that working full-time is essential given the increased demand and University priorities in addressing student mental health concerns.

Saroki-Keller argues that her experience as a CAPS counselor for 17 years indicates that full-time employment is not an essential function. This argument is corroborated by Dr. Byczek's testimony that she was aware of no performance issues during Saroki-Keller's time working at the University, though it was on a part-time basis. (ECF No. 19-11, PageID.295.) But a lot changes in 17 years. And case law supports the University's ability to change job requirements to adapt to or address student needs. *See, e.g., Stevens v. Rite Aid Corp.*, 851 F.3d 224, 229 (2d. Cir. 2017) (holding that administering immunizations by injection was an essential job requirement for Rite Aid pharmacists after the company made a business decision to require pharmacists to administer immunizations 34 years into plaintiff's job). Thus Saroki-Keller's experience that predates the student senate's resolution and consultant recommendations is not persuasive as to whether full-time employment is an essential function after the restructuring.

C.

Saroki-Keller makes several arguments in an attempt to show that working full-time is not an essential function of being a counselor at CAPS. But none of these arguments would persuade a reasonable jury to find in her favor.

Saroki-Keller argues that the University's desire to treat more students is not an essential function because increasing productivity standards and efficiency does not relieve an employer of its duty to provide reasonable accommodation. Said

14

differently, requiring employees to do more of a certain duty cannot be an essential function because an employer may be reasonably required to lower those standards as an accommodation under the ADA. Saroki-Keller primarily relies on *Smith v. Henderson,* 376 F.3d 529 (6th Cir. 2004), in support of this argument.

But *Smith* is of no help to Saroki-Keller. Though the *Smith* Court noted that "lower production and increased costs [from plaintiff's proposed accommodation]" might not "amount[] to significant difficulty or expense," it made this statement while determining whether the proposed accommodation would impose an undue hardship. *Smith,* 376 F.3d at 536. The *Smith* Court had already found that a reasonable factfinder could determine that the duty in question was not essential because previous employees in plaintiff's position were able to delegate the function. *Id.* So Smith did not hold that a job requirement is *non-essential* just because it is imposed for productivity or cost reasons. And *Smith* is distinguishable from Saroki-Keller's case because Smith was able to provide competing evidence showing that the duty was non-essential when it came to similarly situated employees, which is not what the record shows here.

Saroki-Keller similarly relies on *Bridgewater v. Michigan Gaming Control Bd.*, 282 F.Supp.3d 985 (E.D. Mich. 2017). The Court there found that Bridgewater had shown that his job may be one of those "'rare cases' in which regular attendance is not an 'essential function.'" *Id.* at 997 (quoting *Williams*, 847 F.3d at 392).

But this case is also distinguishable from Saroki-Keller's situation. True, *Bridgewater* involved an employee who was given a "flexible" work schedule due to

15

his disability for a decade and was able to complete his work on that flexible work schedule. *Id.* But the employee "would, under any proposed version of his schedule, work the same number of hours per week and per pay period: 40 hours per week and 80 hours per pay period. Only the days and times of those hours would vary." *Id.* at 998. This is vastly different than the facts here, where the number of hours worked— and the number of students served—is the central issue in the case. Therefore, the *Bridgewater* Court's analysis is not persuasive in this context.

Saroki-Keller also contends that the University could have kept her part-time position and hired one or more full-time counselors to meet its reorganization goals of decreasing student wait times and providing services to more students.

But employers are not required to create new positions to accommodate their employees or to hire other employees to perform tasks essential to the plaintiff's position. *See Green*, 683 F. App'x at 493. Saroki-Keller tries to avoid this by emphasizing that she was asking the University to *maintain* her position rather than *create* a new position. But this is just wordplay. Under the University's plan, the part-time positions were eliminated. So maintaining Saroki-Keller as a part-time counselor would necessarily involve adding a new position to meet student demand. And "the inquiry into essential functions is not intended to second guess an employer's business judgment" or "meant to require employers to lower such standards." *E.E.O.C.*, 782 F.3d at 762 (internal quotation marks omitted). So, though perhaps the University could have met its student-related goals using other employee structures, it decided to require full-time employment. And the Court will not

16

question that decision when, as discussed above, the University has explained its decision by providing reasons that the evidence of record supports.

* * *

In sum, because working full-time is an essential function of the CAPS counselor position, and Saroki-Keller cannot work full-time with or without a reasonable accommodation, she is not otherwise-qualified for the position. So no reasonable jury could find that she has made a *prima facie* case for failure to accommodate under the Rehabilitation Act.

Therefore, the Court will GRANT the University's motion for summary judgment and DENY Saroki-Keller's motion for summary judgment on the failure to accommodate claim.

IV.

The Court next turns to Saroki-Keller's claim that the University terminated her on the basis of her disability. Saroki-Keller can establish this claim by presenting either direct or indirect evidence of discrimination. *Gohl v. Livonia Pub. Schs. Sch. Dist.*, 836 F.3d 672, 682 (6th Cir. 2016).

Saroki-Keller provides no evidence of direct discrimination. *See id.* at 683 ("Direct evidence explains itself. It does not require the fact finder to draw any inferences to reach the conclusion that unlawful discrimination was at least a motivating factor[.]") (internal citations omitted).

If Saroki-Keller relies on indirect evidence, the *McDonnell Douglas* burden-shifting framework applies. *Bent-Crumbley v. Brennan*, 799 F. App'x 342, 345 (6th

17

Cir. 2020). Saroki Keller must make a prima facie case that she 1) has a disability as defined under the Rehabilitation Act; 2) is otherwise qualified to perform the job requirements; and (3) that the adverse action was taken solely by reason of the disability. *Id.*

As established above, Saroki-Keller is not otherwise qualified to be a CAPS counselor at the University because she cannot perform the essential function of working full-time. Therefore, Saroki-Keller's claim that she was terminated on the basis of her disability is dismissed.

V.

Because the Court finds that Saroki-Keller is not otherwise qualified for the position of CAPS counselor, her failure-to-engage-in-the-interactive-process claim must also be dismissed.

The ADA and Rehabilitation Act require an employer to "initiate an informal, interactive process" to determine how an employee's disability limits their ability to work and to identify appropriate reasonable accommodations. *Williams*, 847 F.3d at 395; 29 C.F.R § 1630.2(o)(3). But the Court here does not have to consider the claim because failure to engage in the interactive process is only actionable if the employee can demonstrate they were otherwise qualified for the position. *Id.*; *see E.E.O.C.*, 782 F.3d at 766. Because Saroki-Keller could not work full-time, she could not have performed the essential functions of her job with or without reasonable accommodation. So no reasonable accommodation exists for the University to

18

identify. The University is therefore entitled to summary judgment on the failure-to-engage-in-the-interactive-process claim under the Rehabilitation Act.

VI.

For the reasons given, the Court GRANTS the University's motion for summary judgment and DENIES Saroki-Keller's motion for summary judgment. This case is dismissed.

SO ORDERED.

Dated: October 22, 2021

                                                s/Laurie J. Michelson
                                                LAURIE J. MICHELSON
                                                UNITED STATES DISTRICT JUDGE